UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------X

DAVID PRICE and ERNANDO          :
ASHOKA THOMAS,                    :
                                  :
        Plaintiffs,     :
                                  :
   - against -                    :
                                  :
FOX ENTERTAINMENT GROUP, INC.,    :
FOX FILMED ENTERTAINMENT,         :
TWENTIETH CENTURY FOX,            :
TWENTIETH CENTURY FOX HOME        :
ENTERTAINMENT, INC., RED HOUR     :
FILMS, and RAWSON THURBER,        :
                                  :
        Defendants.     :

## OPINION AND ORDER

### 05 Civ. 5259 (SAS)

------------------------------------------------------X

GREGORY JAMES GAUGEL and          :
YNOT VISIONS, A Partnership,       :
                                  :
        Intervening-Plaintiffs,     :
                                  :
   - against -                    :
                                  :
DAVID PRICE and ERNANDO           :
ASHOKA THOMAS,                    :
                                  :
        Plaintiffs,     :
                                  :

**FOX ENTERTAINMENT GROUP, INC.,** :
**TWENTIETH CENTURY FOX FILM** :
**CORPORATION, TWENTIETH** :
**CENTURY FOX HOME** :
**ENTERTAINMENT, LLC, FOX** :
**FILMED ENTERTAINMENT,** :
**TWENTIETH CENTURY FOX,** :
**TWENTIETH CENTURY FOX HOME** :
**ENTERTAINMENT, INC., RED HOUR** :
**FILMS, and RAWSON THURBER,** :
:
**Defendants.** :
-------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

This litigation involves two movies about a dodgeball competition in which a team of misfits or underdogs are pitted against a stronger team of bullies. Plaintiffs allege that defendants infringed the copyright of their 2001 screenplay *Dodgeball: The Movie* through production and distribution of *Dodgeball: A True Underdog Story*, a movie released by defendants in June 2004. Gregory James Gaugel ("James") and YNOT Visions, A Partnership ("YNOT") (collectively, "intervening-plaintiffs") claim that they are entitled to ownership rights in the plaintiffs' screenplay and that they too have the right to recover against defendants for infringement. Following discovery, plaintiffs moved for summary judgment granting plaintiffs' cross-claim for declaratory judgment and dismissing intervening-plaintiffs' verified complaint. For the reasons described below, plaintiffs' motion is granted in its entirety.

1

## I.      BACKGROUND

### A.      Facts

This Opinion assumes familiarity with the facts summarized in the Opinion and Order issued simultaneously with this Opinion denying defendants' motion for summary judgment.[1]  Additional undisputed facts relevant to this motion are summarized below.

In 1999, plaintiff Ernando Ashoka Thomas wrote a screenplay entitled *Raw Fish*, which he registered with the Writers Guild of America ("WGA").[2]  In or about 1999, Thomas met James, a photographer, and in or about July 2000, Thomas and James agreed to produce and direct a low-budget movie of *Raw Fish* jointly under the name YNOT Visions.[3]  James did not write any portion of *Raw Fish*.[4]  Thomas and James filed a document with the Recorder's Office indicating an intention to do business as a production company under the name

---

[1]      *See Price v. Fox*, No. 05 Civ. 5259, — WL — (S.D.N.Y. Jan. 26, 2007).

[2]      *See* Plaintiffs' Corrected Rule 56.1 Statement in Support of Plaintiffs' Motion for Summary Judgment Granting Plaintiffs' Cross-Claim and Dismissing the Intervenors' Verified Complaint ("Pl. 56.1") ¶¶ 1-2.

[3]      *See id.* ¶¶ 3, 6-7.

[4]      *See id.* ¶ 5.

YNOT Visions and identifying YNOT as a general partnership.[5]  Thomas was never an employee of either YNOT or James.[6]  Neither YNOT nor James paid Thomas a salary or provided him health or pension benefits.[7]

Thomas and James verbally agreed to split equally any profits that might be earned from directing and producing *Raw Fish*.[8]  From September 2000 to March 2001, Thomas and James produced and directed *Raw Fish* on a budget of less than $50,000, financed with their own money and funds obtained from friends and family.[9]  On March 20, 2001, Thomas and James held a screening of *Raw Fish* in Los Angeles and have made other efforts to find a studio or investor interested in purchasing *Raw Fish*, but they have been unsuccessful and have never been paid for their efforts on *Raw Fish* by YNOT or any other person or entity.[10]

The screenplay, *Dodgeball: The Movie* ("*Dodgeball*"), was written between January and March 2001.[11]  During that time, James had suggested

---

[5]     *See id.* ¶ 8.

[6]     *See id.* ¶ 27.

[7]     *See id.* ¶¶ 10-11.

[8]     *See id.* ¶ 9.

[9]     *See id.* ¶ 29.

[10]    *See id.* ¶¶ 13-15.

[11]    *See id.* ¶ 18.  It is undisputed that Thomas is an author; the issue raised by this motion is whether he had a co-author, and if so, whether the co-

several changes that were rejected by Thomas and never made their way into the script, including the following: James wanted the character of Gordo to be less offensive and to be portrayed as an artist; he wanted to change the portion of the screenplay that described the childhood of "T"; and he wanted Thomas to remove the scenes showing a dodgeball team of pregnant women and a mentally disabled person.[12]

On March 28, 2001, Thomas registered *Dodgeball* with the WGA and identified himself as the sole author.[13]  On the top of the cover page of the filed copy in bold letters appears the title of the screenplay, followed directly underneath by the words "By Ashoka Thomas."[14]  The bottom left hand corner of the cover page contains the date "March 26, 2001," "YNOT Visions," and a phone number.[15]  James knew that Thomas had registered the screenplay with the WGA,

---

author was James or plaintiff David Price.

[12]     *See id.* ¶¶ 51-59.

[13]     *See id.* ¶ 61.

[14]     *See id.* ¶ 62; *see also* Corrected Declaration of Guy R. Cohen in Support of Plaintiffs' Motion for Summary Judgment Granting Plaintiffs' Cross-Claim and Dismissing the Intervenors' Verified Complaint ("Cohen Decl."), Ex. 4 at P001330.

[15]     *See* Intervening Plaintiffs' Opposition to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts ("Interv. 56.1") ¶ 62; *see also* Cohen Decl. Ex. 4 at P001330.

but never reviewed or asked to review the registration documents, nor did he ever ask Thomas whom he had identified as the author.[16]

At some point between March and May 2001, a copy of the *Dodgeball* screenplay was given to Chris Taylor at ICM, a talent agency.[17] Shortly thereafter, a document was created at ICM summarizing and criticizing *Dodgeball* (the "ICM Coverage").[18]  The upper left-hand corner of each page of that document contains the notation:  "Author:  Ashoka Thomas," and there are several references to the author or writer in the singular form.[19]  James had access to and read the ICM Coverage at or about the time it was issued.[20]  In March 2001, Thomas and James met with Shaun Redick at the William Morris Agency and gave him a copy of *Dodgeball*.[21]  Redick subsequently testified that Thomas is the author of the work.[22]

---

[16]   *See* Pl. 56.1 ¶¶ 63-64.

[17]   *See id.* ¶ 65.

[18]   *See id.* ¶ 69.

[19]   *See id.* ¶¶ 70, 71.

[20]   *See id.* ¶ 72.

[21]   *See id.* ¶ 79.

[22]   *See id.* ¶ 80.

In 2002, Thomas created a revised cover page for *Dodgeball*, in the center of which in bold letters appears the title of the screenplay, followed directly underneath by the words "By Ashoka Thomas," and at the bottom left hand corner of which appear the date, "Greg James" and two phone numbers.[23]  On August 25, 2004, Thomas registered *Dodgeball* with the Copyright Office, identifying himself as the sole author.[24]  On December 21, 2004, however, Thomas amended the registration to identify David Price as a co-author.[25]  James is not identified on either registration document.[26]

On June 2, 2005, plaintiffs filed a complaint against defendants alleging copyright infringement under the Copyright Act of 1976 (the "Copyright Act").[27]  In or about March 2006, defendants served then third-party James with a subpoena for documents and testimony, pursuant to which James produced various documents and other materials.[28]  On April 14, 2006, James, through counsel, notified the court that he wished to intervene in the lawsuit and assert his rights as

---

[23]   *See id.* ¶¶ 84-85.

[24]   *See id.* ¶ 86.

[25]   *See id.* ¶ 87.

[26]   *See id.*

[27]   *See* 17 U.S.C. § 101 *et seq.*

[28]   *See* Pl. 56.1 ¶¶ 90, 93-95; Interv. 56.1 ¶ 93.

a co-author of the *Dodgeball* screenplay.  On May 9, 2006, the Court granted James and YNOT leave to intervene.  On May 15, 2006, intervening-plaintiffs filed their complaint, alleging copyright infringement against defendants and asserting various cross-claims against plaintiffs claiming, *inter alia*, breach of partnership agreement, breach of contract, misappropriation and conversion.  On June 14, 2006, plaintiffs answered intervening-plaintiffs' cross-claims and asserted a cross-claim against intervening-plaintiffs seeking declaratory judgment that neither James nor YNOT has any ownership or other interest in the *Dodgeball: The Movie* screenplay.

Following discovery, defendants moved for summary judgment against plaintiffs and intervening-plaintiffs.  In addition, plaintiffs moved for summary judgment against the intervening-plaintiffs on their cross-claim for declaratory judgment and dismissing the intervening-plaintiffs' complaint.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[29]  An issue of fact is genuine "'if the evidence is

---

[29]     Fed. R. Civ. P. 56(c).

7

such that a reasonable jury could return a verdict for the nonmoving party."[30]  A fact is material when it "'might affect the outcome of the suit under the governing law.'"[31]

The movant has the burden of demonstrating that no genuine issue of material fact exists.[32]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact that does "'not rely on conclusory allegations or unsubstantiated speculation.'"[33]  To do so, it must do more than show that there is a "'metaphysical doubt as to the material facts.'"[34]  In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[35]

---

[30]    *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

[31]    *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[32]    *See, e.g.*, *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[33]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[34]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[35]    *See id.*

8

## B.     Joint Works and Co-Authorship Under the Copyright Act

The Copyright Act defines a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."[36] "The touchstone of the statutory definition is the intention at the time the writing is done that the parts be absorbed or combined into an integrated unit."[37] Co-authorship entitles the co-authors to "equal undivided interests in the whole work."[38]

In *Childress v. Taylor*, in order to address the concern of overreaching contributors, the Second Circuit set forth a more exacting standard than the statutory definition.[39] In order to prove co-authorship, the "co-authorship claimant bears the burden of establishing that . . . the co-author[] (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors."[40]

---

[36]     17 U.S.C. § 101.

[37]     *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998).

[38]     *Id.*

[39]     *See* 945 F.2d 500, 507-08 (2d Cir. 1991).

[40]     *Id. Accord Thomson*, 147 F.3d at 200.

9

Under the *Childress* standard, "collaboration alone is insufficient to establish joint authorship."[41] "Rather, the contribution of each joint author must be independently copyrightable."[42] "[C]opyright does not protect an idea, but only the expression of an idea."[43] Thus, in order to be a joint author, each purported joint author must have contributed copyrightable expression to the work.

In order to satisfy the second prong of the *Childress* test, the parties must "entertain in their minds the concept of joint authorship" such that the "participants fully intend to be joint authors."[44] This element "is not strictly subjective," however, and "does not turn solely on the parties' own words and professed state of mind."[45] Rather, "a more nuanced inquiry into the factual indicia of ownership and authorship" is required, "such as how a collaborator regarded [him]self in relation to the work in terms of billing and credit, decision-making, and the right to enter into contracts."[46]

### 3.   Statute of Limitations

---

[41]   *Thomson*, 147 F.3d at 200 (citing *Childress*, 945 F.2d at 507).

[42]   *Id.*

[43]   *Kregos v. Associated Press*, 3 F.3d 656, 663 (2d Cir. 1993).

[44]   *Childress*, 945 F.2d at 508, 509.

[45]   *Thomson*, 147 F.3d at 201.

[46]   *Id.*

10

### a.    Application to Co-Authorship Claims

The Copyright Act's three-year statute of limitations applies to claims of co-authorship in a copyrighted work.[47]  Thus, "plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration."[48]  "Copyright ownership claims accrue 'when a plaintiff knows or has reason to know of the injury upon which the claim is premised.'"[49] "A co-author knows that he or she jointly created a work from the moment of its creation."[50]  As such "'[a]n express assertion of sole authorship or ownership will start the copyright statute of limitations running.'"[51]

### b.    Equitable Tolling and Equitable Estoppel

Equitable estoppel or equitable tolling "can excuse a claimant's failure to comply with the applicable statute of limitations" under "extraordinary

---

[47]    *See Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996).

[48]    *Id.*

[49]    *Big East Entm't, Inc. v. Zomba Enters., Inc.*, 453 F. Supp. 2d 788, 794 (S.D.N.Y. 2006) (quoting *Merchant*, 92 F.3d at 56).

[50]    *Merchant*, 92 F.3d at 56.

[51]    *Id.* (quoting *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997)).

circumstances."[52]  "On a motion for summary judgment, the burden is on the

plaintiff to present facts which, if true, justify equitably estopping a defendant

from asserting the statute of limitations."[53]  "Equitable estoppel may toll a statute

of limitations where the plaintiff knew of the existence of his cause of action, but

the defendant's misconduct caused him to delay in bringing suit."[54]  Equitable

estoppel applies only where the plaintiff can show that "egregious wrongdoing" by

a defendant prevented the plaintiff from bringing suit on a claim of which the

plaintiff was aware.[55]  "Under the equitable tolling doctrine . . . a statute of

limitations does not run against a plaintiff who was justifiably ignorant of his

cause of action."[56]

---

[52]     *Netzer*, 963 F. Supp. at 1316.

[53]     *Id.*

[54]     *Id.* (citing *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d
Cir. 1995)).  *Accord Cerbone v. ILGWU*, 768 F.2d 45, 50 (2d Cir. 1985) (equitable
estoppel applies where, although the plaintiff is aware of his cause of action, his
delay is excused because the defendant "lulled the plaintiff into believing that it
was not necessary for him to commence litigation").

[55]     *Netzer*, 963 F. Supp. at 1316.  *Accord Carell v. Shubert Org., Inc.*,
104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000) ("The doctrine only applies when the
defendant has taken active steps to prevent [the plaintiff] from suing in time, as for
example, by promising not to plead the statute of limitations." (quotation
omitted)).

[56]     *Netzer*, 963 F. Supp. at 1316 (citing *Dillman v. Combustion Eng'g,
Inc.*, 784 F.2d 57, 60 (2d Cir. 1986)).  *Accord Weber v. Geffen Records, Inc.*, 63 F.

"A plaintiff seeking to invoke either doctrine is also required to demonstrate that his ignorance is not attributable to a lack of diligence on his part."[57] "A plaintiff who unreasonably relies on the reassurances of a wrongdoer has not satisfied this obligation of due diligence."[58] Fraudulent concealment by the party seeking to assert the statute of limitations defense is one ground for invoking the equitable tolling doctrine.[59] "A plaintiff seeking to avoid the bar of limitations has the burden of both pleading and ultimately proving fraudulent concealment" as well as of "demonstrating the exercise of due diligence."[60]

## C.   Copyright Ownership

### 1.   Initial Vesting of Copyright Ownership

The Copyright Act "provides that copyright ownership 'vests initially in the author or authors of the work.'"[61] "The author of a given work is 'the

---

Supp. 2d 458, 466 (S.D.N.Y. 1999).

[57]     *Netzer*, 963 F. Supp. at 1316.

[58]     *Id.*

[59]     *See id.*

[60]     *Id.*

[61]     *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 185 (2d Cir. 2004) (quoting 17 U.S.C. § 201(a)). *Accord Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).

person who translates an idea into a fixed, tangible expression entitled to copyright protection.'"[62] There is an exception, however, for "works made for hire," in which case "'the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a written agreement to the contrary."[63] A work is "for hire" if it is either (1) "prepared by an employee within the scope of his or her employment," or (2) "specially ordered or commissioned for use . . ., if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."[64] "[A] work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors, and ordinary canons of statutory interpretation indicate that the classification of a particular hired party should be made with reference to agency law."[65]

In *Community for Creative Non-Violence v. Reid*, the Supreme Court listed various factors that could be considered in making this determination, none

---

[62]     *Shaul*, 363 F.3d at 185 (quoting *Reid*, 490 U.S. at 737).

[63]     *Reid*, 490 U.S. at 737 (quoting 17 U.S.C. § 201(b)).  *Accord Shaul*, 363 F.3d at 185-86.

[64]     *Reid*, 490 U.S. at 738 & n.5 (citing 17 U.S.C. § 101 as "defin[ing] each of the nine categories of 'specially ordered or commissioned' works").

[65]     *Id.* at 743.

of which is determinative,[66] and the Second Circuit, in *Aymes v. Bonelli*, narrowed that list to certain factors that "will almost always be relevant and should be given more weight in the analysis, because they will usually be highly probative of the true nature of the employment relationship."[67]  The *Reid-Aymes* factors are:  "(1) the hiring party's right to control the manner and means of creation; (2) the skill required; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party."[68]  "Questions of historical fact relevant to applying each of the *Reid-Aymes* factors are for the finder of fact, but the ultimate determination, on settled facts, of whether a work qualifies as a work-for-hire is a question of law."[69]

## 2.    Transfer of Ownership

The Copyright Act provides that a transfer of copyright ownership "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such

---

[66]    *Id.* at 751-52.

[67]    980 F.2d 857, 861 (2d Cir. 1992).

[68]    *Id.*

[69]    *Ulloa v. Universal Music & Video Distrib. Corp.*, 303 F. Supp. 2d 409, 414-15 (S.D.N.Y. 2004).

15

owner's duly authorized agent."[70]  Transfer of ownership is not required if the parties are joint authors.[71]

## D.   Availability of Certain State Law Claims

### 1.   Preemption

The Copyright Act expressly provides for preemption of state law.[72] "The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act . . ., and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law. . . ."[73]  "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'"[74] "The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit

---

[70]    17 U.S.C. § 204(a).  *See also Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46-47 (2d Cir. 2002).

[71]    *See Robinson v. Buy-Rite Costume Jewelry, Inc.*, No. 03 Civ. 3619, 2004 WL 1878781, at *4 (S.D.N.Y. Aug. 23, 2004).

[72]    *See* 17 U.S.C. § 301(a).

[73]    *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005).

[74]    *Id.*

of one of the categories of copyrightable works."[75] "The general scope requirement is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law."[76]

"[T]he state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim."[77] "To determine whether a claim is qualitatively different, we look at 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'"[78] The court takes a "restrictive view" of what qualifies as an extra element sufficient to shield the claim from copyright preemption.[79] Nevertheless, "a state law claim is qualitatively different if it requires such elements as breach of fiduciary duty, or possession and control of chattels."[80]

### 2.   Statute of Limitations

---

[75]    *Id.*

[76]    *Id.* (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).

[77]    *Id.*

[78]    *Id.* at 306 (quoting *Computer Assocs.*, 982 F.2d at 716).

[79]    *Id.*

[80]    *Id.* (citations omitted).

17

The parties do not dispute that California law applies to intervening-plaintiffs' state law claims of breach of contract, breach of fiduciary duty, misappropriation, fraudulent misrepresentation, conversion, and *quantum meruit*.[81] Plaintiffs assert, and intervening-plaintiffs do not dispute, that under California law, the relevant statute of limitations for each of those state law claims is four years or less.[82]

---

[81]   Intervening-Plaintiffs also bring a single claim under New York law, alleging a violation of section 392-b of New York's General Business Law.

[82]   *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Granting Plaintiffs' Cross-Claim and Dismissing the Verified Complaint of Intervenors ("Pl. Mem."), at 22 & n.6.

## III.  DISCUSSION

### A.    James's Co-Authorship Claim Under the Copyright Act

#### 1.    The Co-Authorship Claim Is Time-Barred

James's claim under the Copyright Act of rights as a co-author of the

*Dodgeball* screenplay accrued when Thomas made an "express assertion of sole

authorship."[83]  Thomas asserted sole authorship several times, including:  in the

March 28, 2001 submission of the screenplay to the WGA, which listed Thomas as

the sole author; on the cover page of the screenplay submitted sometime between

March and May 2001 to ICM for coverage, in which Thomas listed himself as the

sole author on the by-line; the subsequent ICM Coverage document, which

contained numerous references to Thomas as the sole author; and on the revised

2002 cover page of the screenplay, in which Thomas again listed himself as the

sole author on the by-line and placed James's name only in the lower left-hand

corner above the contact information.  James did not assert his claim of co-

authorship until April 2005 — more than three years after his claim accrued.  As

such, James's co-authorship claim under the Copyright Act is time-barred unless

---

[83]    *Merchant*, 92 F.3d at 56. *See also Thomson*, 147 F.3d at 203 ("[A] writer's attribution of the work to herself alone is 'persuasive proof . . . that she intended this particular piece to represent her own individual authorship' and is '*prima facie* proof that [the] work was not intended to be joint.'" (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1320 (2d Cir. 1989))).

the statute of limitations is equitably tolled or if plaintiffs are equitably estopped from asserting that defense.

### 2.   Equitable Tolling Doctrine

James claims that he was ignorant of Thomas's assertions of sole authorship of the screenplay because of Thomas's alleged misconduct.  This is essentially an invocation of the equitable tolling doctrine.[84]  As discussed above, in order to invoke the equitable tolling doctrine to excuse the failure to file timely a claim of co-authorship under the Copyright Act, the burden is on the purported co-author to prove:  (1) that he was ignorant of the author's assertion of sole authorship, *e.g.*, as a result of fraudulent concealment, and (2) that his ignorance is not attributable to a lack of diligence on his part.[85]  James has raised a material issue of fact as to prong one, but has failed as to prong two.

### a.   Prong One:  Ignorance of the Claim

---

[84]     *See Netzer*, 963 F. Supp. at 1316 ("Netzer's contentions [that he didn't know about his claim or that he relied on reassurances of the author] will be construed as an argument that the doctrines of equitable estoppel or equitable tolling should suspend the running of the limitations period.").

[85]     *See id.* ("A plaintiff seeking to avoid the bar of limitations has the burden of both pleading and ultimately proving fraudulent concealment" as well as of "demonstrating the exercise of due diligence.").

James claims that he was unaware of Thomas's assertions of sole authorship in the screenplay because he alleges that Thomas surreptitiously removed James's name from the cover page of the script without James's knowledge. This states a claim of fraudulent concealment, which James must prove at trial in order to succeed on his assertion of equitable tolling.[86]

The evidence of fraudulent concealment consists of James's testimony and that of his friend Kevin Casper, both of whom testified that the cover page had originally contained the names of both Thomas and James. Because the cover page eventually contained only Thomas's name on the by-line, the inference is that Thomas surreptitiously removed James's name from the cover. As to the ICM Coverage document, James claims that even though he delivered the copy of the screenplay that was given to ICM for coverage, he asserts that the envelope containing the screenplay was prepared by Thomas and sealed and that James did not actually see the cover page, supporting an inference that his name must have been surreptitiously removed.[87] It is undisputed that James saw the ICM Coverage document at or about the time it was issued, in

---

[86]    *See id.* (construing plaintiff's claim of ignorance as a claim of fraudulent concealment).

[87]    *See* Affidavit of Gregory James Gaugel ("James Aff.") ¶ 23.

21

2001, and that it unambiguously identified Thomas as the sole author on every page. However, James now asserts that he does not recall having seen only Thomas's name as the author, and further, that if he had, he would have written in his own name and discussed it with Thomas.[88]

Although this evidence is weak, indeed perilously close to speculative, I cannot conclude as a matter of law that a jury could not reasonable believe all of that evidence and find that James was in fact ignorant of Thomas's assertions of sole authorship. Thus, James has raised a genuine issue of fact as to prong one of the equitable tolling doctrine.

### b.   Prong Two:  Due Diligence

Nevertheless, James has failed to offer any evidence whatsoever on prong two of the equitable tolling doctrine, the due diligence requirement. It is undisputed that James never reviewed or asked to review the registration documents, nor did James ever ask Thomas whom he had identified as the author in those documents. James concedes that he did nothing to exercise due diligence because he "trusted" Thomas.[89] Standing alone, this assertion does not raise a

---

[88]   *See id.*

[89]   *See* Interv. 56.1 ¶ 64.

genuine issue of material fact.[90]  The record is devoid of any evidence upon which a reasonable jury could conclude that James exercised due diligence in attempting to ascertain whether he was being identified as the work's co-author and that his ignorance was not attributable to his lack of diligence.[91]  As such, the equitable tolling doctrine is inapplicable and cannot excuse James's failure to file his co-authorship claim within the three-year statute of limitations.

### 3.    Equitable Estoppel

Equitable estoppel is also inapplicable to the facts of this case.  James asserts that he was not aware of his claim (*i.e.*, invoking equitable tolling), as opposed to asserting that he was aware of his claim but that plaintiff's conduct led him to believe that plaintiff would not assert the statute of limitations defense (*i.e.*, equitable estoppel).  Because James cannot invoke either equitable tolling or equitable estoppel to excuse his untimely assertion of co-authorship, James's claim of co-authorship is time-barred and must be dismissed.

### B.    YNOT's Ownership Claim Under the Copyright Act

---

[90]      *Cf. Netzer*, 963 F. Supp. at 1316 ("A plaintiff who unreasonably relies on the reassurances of a wrongdoer has not satisfied this obligation of due diligence.").

[91]      Indeed, intervening plaintiffs do not even address James's due diligence, or lack thereof, in their memorandum of law.

### 1.   Initial Vesting of Ownership

Given that James was not a co-author of *Dodgeball*, copyright ownership in *Dodgeball* vested initially in Thomas unless the work qualifies as a work for hire.  It is undisputed that Thomas was not an employee of James or YNOT and, in any event, the undisputed facts that bear on the *Reid-Aymes* factors cannot give rise to a finding that *Dodgeball* was "prepared by an employee within the scope of his or her employment."[92]  Further, *Dodgeball* does not qualify as a "specially ordered or commissioned" work because it is undisputed that there is no signed writing that evidences any agreement between Thomas and James or YNOT that the work "shall be considered a work made for hire."[93]  Because *Dodgeball* is not a work for hire, copyright ownership vested in Thomas — not in James or YNOT.

### 2.   Transfer of Ownership

It is undisputed that there is no written document conveying or transferring the copyright from Thomas to YNOT.  The mere existence of a partnership and its supporting documents and certificates do not satisfy the writing

---

[92]     *Reid*, 490 U.S. at 738.  For example, it is undisputed that Thomas received neither salary nor employee benefits from either James or YNOT.

[93]     *Id.*

requirement of the Copyright Act because it is undisputed that those documents by their terms do not transfer the copyright itself.  Further, any claim of ownership based on an oral agreement or the existence of a partnership or joint venture is barred by the Copyright Act.[94]

Nevertheless, intervening-plaintiffs claim that Thomas was holding the copyright in trust for the YNOT partnership based on the argument that a copyright "may be held in trust for the benefit of a party *rightfully entitled thereto*."[95]  Intervening-plaintiffs' citation to the 1915 decision in *Maurel v. Smith* and its progeny is misplaced because the court's finding of constructive trust in *Maurel* was predicated on the finding of co-authorship, which entitles the co-author to the full panoply of copyright ownership rights.  As detailed above, because intervening-plaintiffs' claim of co-authorship fails as a matter of law, so does their claim for constructive trust.  Summary judgment is granted in favor of

---

[94]     *See Time, Inc. v. Kastner*, 972 F. Supp. 236, 238 (S.D.N.Y. 1997) (stating that section 204 "bars breach of contract claims based on oral agreements that violate that section"); *see also id.* at 239 (citing *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355, 358 (9th Cir. 1994) (claimant cannot "dispense with the written instrument requirement altogether by claiming an oral partnership or joint venture")).

[95]     Intervening Plaintiffs' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Interv. Mem."), at 16 (emphasis added) (citing *Maurel v. Smith*, 220 F. 195 (S.D.N.Y. 1915)).

plaintiffs declaring that YNOT does not have an ownership interest in *Dodgeball*. Summary judgment is also granted in favor of plaintiffs dismissing intervening-plaintiffs' Sixteenth Claim for Relief seeking declaratory judgment of ownership on behalf of YNOT.

Thus, neither James nor YNOT have any ownership or exclusive interest in the *Dodgeball* screenplay as a matter of law.  Intervening-plaintiffs' Fourth claim for relief accusing plaintiffs of "palming off" the screenplay as their own is dismissed.  Likewise, intervening-plaintiffs' First, Second and Third claims for relief against defendants for copyright infringement must also be dismissed for lack of standing to bring an infringement action.[96]

## C.    State Law Claims

### 1.    Preemption

Plaintiffs claim that certain of intervening-plaintiffs' state law claims are preempted by federal copyright law, namely, breach of contract, conversion,

---

[96]    *See* 17 U.S.C. § 501(b) (providing that "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it"). *Accord Big East Ent't*, 453 F. Supp. 2d at 796-97 (citing *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982)).  Even if YNOT or James had a non-exclusive license to produce *Dodgeball* as a motion picture, such non-exclusive rights do not confer the right to bring an infringement action under the Copyright Act. *See* 17 U.S.C. § 501(b).

conspiracy to commit conversion, misappropriation, and *quantum meruit*. The subject matter requirement is satisfied here because the common subject of the claims is *Dodgeball*, a screenplay for a motion picture, which is a copyrightable work. The general scope requirement is satisfied with respect to the breach of contract, conversion, conspiracy and misappropriation claims because the act that gave rise to these claims is Thomas's alleged failure to treat James as a co-author and to account to him for profits, which is covered by federal copyright law. Under the "restrictive view" of what qualifies as an extra element,[97] none of these claims include any extra elements that make them qualitatively different from a claim for co-authorship under the Copyright Act. As such, the Seventh, Ninth, Tenth, and Eleventh claims for relief are preempted and are dismissed.

With respect to the *quantum meruit* claim, however, James is seeking compensation for work he contributed to the screenplay that could, in theory, be considered separate and apart from ownership. As such, that claim for relief is not necessarily preempted by the Copyright Act.

### 2.    Merits of the State Law Claims

Intervening-plaintiffs remaining non-preempted state law claims are either without merit or time-barred. *First*, intervening-plaintiffs' claims for breach

---

[97]    *Briarpatch*, 373 F.3d at 306.

27

of partnership agreement and for breach of fiduciary duty fail because they are predicated on the assumption that *Dodgeball* is a partnership asset.  I have already determined, as a matter of law, that YNOT has no ownership interest in the screenplay.  Likewise, the claim for breach of contract fails because it is based on a non-existent agreement between Thomas and James to share authorship.[98]

*Second*, intervening-plaintiffs' claim under section 392-b of New York's General Business Law, which provides that falsely labeling merchandise sold in New York is a misdemeanor is patently inapplicable.  Intervening-plaintiffs' Twelfth claim for relief under that statute must be dismissed.

*Third*, James's claim for *quantum meruit* damages is time-barred.  Under California law, claims for *quantum meruit* must be brought within two years of the time that the plaintiff's compensation is earned.[99]  Even if James could prove that he was promised compensation for his collaboration on the *Dodgeball*

---

[98]     In any event, it is undisputed that Thomas has never been paid by anyone for writing *Dodgeball*. *See* Pl. 56.1 ¶ 30.  Further, to the extent that intervening-plaintiffs are claiming breach of partnership agreement and breach of contract based on proceeds from *Raw Fish*, it is undisputed that no such proceeds exist. *See id.* ¶ 14.

[99]     *See, e.g.*, *Iverson, Yoakum, Papiano & Hatch v. Berwald*, 76 Cal. App. 4th 990, 996 (Cal. Ct. App. 1999) (citing Cal. Civ. P. Code § 339).

screenplay, that work was complete in 2001.  He did not bring his claim for

*quantum meruit* until 2005.  As such, his claim is time-barred.

      *Finally*, it is undisputed that James has not offered any proof to

support a claim for fraudulent misrepresentation.  Indeed, at his deposition, James

testified that he could not recall any statements made by Thomas to support the

allegations in his complaint.  As such, this claim fails.

      In sum, summary judgment is granted in favor of plaintiffs as to all of

intervening-plaintiffs' state law claims.  Intervening-plaintiffs' Fifth through

Fourteenth claims for relief are dismissed.

## IV.   CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment on plaintiffs' cross-claim for declaratory judgment and dismissing the intervening-plaintiffs' complaint is granted in its entirety.  The Clerk of the Court is directed to close this motion [No. 67 on the Docket Sheet].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 26, 2007

**- Appearances -**

**For Plaintiffs:**

Guy Robert Cohen, Esq.
Neal Howard Klausner, Esq.
Shirin Keen, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019
(212) 468-4800

**For Defendants:**

Robert H. Rotstein, Esq.
Lisa E. Stone, Esq.
Gregory R. Jones, Esq.
McDermott, Will & Emery, LLP
2049 Century Park East, 34th Floor
Los Angeles, CA 90067
(310) 277-4110

Christine A. Pepe, Esq.
Morgan, Lewis & Bockius LLP
340 Madison Avenue
New York, NY 10017
(212) 547-5400

**For Intervening-Plaintiffs**:

Leslie Haim Ben-Zvi, Esq.
Queller, Fisher, Dienst, Serrins, Washor & Kool
233 Broadway, 18th Floor
New York, NY 10279
(212) 719-5300

31