UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID PRICE and ERNANDO : 
ASHOKA THOMAS, :
 :
 : **MEMORANDUM**
 Plaintiffs, : **OPINION AND ORDER**
 :
 - against - : 05 Civ. 5259 (SAS)
 :
FOX ENTERTAINMENT GROUP, INC., :
FOX FILMED ENTERTAINMENT, :
TWENTIETH CENTURY FOX, :
TWENTIETH CENTURY FOX HOME :
ENTERTAINMENT, INC., RED HOUR :
FILMS, and RAWSON THURBER, :
 :
 Defendants. :
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      This litigation involves two movies about a dodgeball competition in which a team of misfits or underdogs are pitted against a stronger team of bullies. Plaintiffs allege that defendants infringed the copyright of their 2001 screenplay *Dodgeball: The Movie* through production and distribution of *Dodgeball: A True Underdog Story*, a movie released by defendants in June 2004. The Court has already decided three motions for summary judgment in this case.[1] Familiarity

---

[1] *See Price v. Fox Ent't Group, Inc.*, No. 05 Civ. 5259, 2007 WL 241389 (S.D.N.Y. Jan. 26, 2007) (denying defendant's motion for summary judgment, which did not cover striking similarity); *Price v. Fox Ent't Group, Inc.*, No. 05 Civ. 5259, 2007 WL 241387 (S.D.N.Y. Jan. 26, 2007) (granting in part and denying in part plaintiffs' motion for summary judgment on defendants' affirmative defenses of laches, estoppel, consent, waiver and unclean hands);

with those opinions is presumed.[2] The jury trial in this case is scheduled to begin on July 30, 2007. Various letter briefs were exchanged in lieu of formal motions in limine. The Court ruled on most of those motions at a conference on April 17, 2007. Two issues remain outstanding. *First*, defendants seek to preclude plaintiffs from proceeding on the theory of striking similarity of the works on the ground that no striking similarity exists as a matter of law. *Second*, even if striking similarity remains in the case, defendants seek to preclude the testimony of plaintiffs' expert, Professor Ken Dancyger, as improper expert witness testimony under Federal Rule of Evidence 702.[3] The Court treats these issues as: (1) a motion for summary judgment by defendants on striking similarity; and (2) a *Daubert* motion to preclude expert testimony under Rule 702. For the reasons discussed below, both motions are granted.

---

*Price v. Fox Ent't Group, Inc.*, 473 F. Supp. 2d 446 (S.D.N.Y. 2007) (granting plaintiffs' motion for declaratory judgment on ownership against intervening-plaintiffs and dismissing the intervening-plaintiffs' complaint). The Court also made summary evidentiary rulings in connection with those motions, *see Price v. Fox Ent't Group, Inc.*, No. 05 Civ. 5259, 2007 WL 241386 (S.D.N.Y. Jan. 26, 2007), but the Court did not delve into the merits of the objections to plaintiffs' expert at that time because it was unnecessary for the Court to consider any expert testimony in reaching its decisions on the summary judgment motions.

[2]     All terms used but not defined herein have the same meaning ascribed to them in those prior opinions.

[3]     Plaintiffs also challenge defendants' use of two experts as cumulative.

1

## I. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[5] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[6]

The movant has the burden of demonstrating that no genuine issue of material fact exists.[7] In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact that does "'not rely on conclusory allegations or unsubstantiated speculation.'"[8] To do so, it must do

---

[4] Fed. R. Civ. P. 56(c).

[5] *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

[6] *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[7] *See, e.g., Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[8] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

more than show that there is a "'metaphysical doubt as to the material facts.'"[9] In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[10]

### B. Copyright Infringement

#### 1. In General

To prevail on a claim of copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[11] I have already ruled that ownership is not an issue in this case.[12] To satisfy the second element of an infringement claim, "a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'"[13]

---

[9] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[10] *See id.*

[11] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

[12] *See* April 17, 2007 Hearing Transcript ("4/17/07 Tr.") at 4-5.

[13] *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)).

3

Because direct evidence is seldom available to prove "actual copying," a plaintiff may fulfill this requirement with indirect evidence, "including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony."[14] "There is an inverse relationship between access and probative similarity such that 'the stronger the proof of similarity, the less the proof of access is required.'"[15] "It is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears 'substantial similarity' to protected expression in the earlier work."[16]

### 2. Striking Similarity

In certain limited situations a plaintiff need not prove access at all, because "the similarities between [the two works] are so extensive and striking as, without more, both to justify an inference of copying and to prove improper appropriation."[17] "'[S]imilarity may be regarded as 'striking' even if somewhat

---

[14] *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992) (quotation marks and citations omitted).

[15] *Jorgensen*, 351 F.3d at 56 (quoting 4 *Nimmer on Copyright* § 13.03[D], at 13-77).

[16] *Castle Rock Entm't*, 150 F.3d at 137 (quotations omitted).

[17] *Arnstein v. Porter*, 154 F.2d 464, 468-69 (2d Cir. 1946). *Accord Jorgensen*, 351 F.3d at 56 ("We have held that where the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying

4

less than verbatim.'"[18] "'Common errors at times may supply the requisite proof, if sufficiently distinctive.'"[19] The finder of fact must "'apply logic and experience to determine if copying is the *only realistic basis for the similarities* at hand.'"[20]

Summary judgment often has been granted in favor of defendants on the issue of striking similarity.[21] "An expert cannot create an issue of fact by rendering an opinion on similarity as to works that no rational jury could find to be strikingly similar."[22]

C. **Admission of Expert Testimony**

The proponent of expert evidence must establish admissibility under Rule 104(a) of the Federal Rules of Evidence by a preponderance of the proof.[23]

---

may be proved without a showing of access.'"); *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997) ("If the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." (quotation omitted)).

[18] *Mowry v. Viacom Int'l, Inc.*, No. 03 Civ. 3090, 2005 WL 1793773, at *10 (S.D.N.Y. July 29, 2005) (quoting 4 Nimmer on Copyright § 13.02[B]).

[19] *Id.* (quoting 4 Nimmer on Copyright § 13.02[B]).

[20] *Id.* (quoting 4 Nimmer on Copyright § 13.02[B]).

[21] *Id.* at *11 (collecting cases).

[22] *Id.* at *14.

[23] *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). *See also Velez v. Sony Discos*, No. 05 Civ. 0615, 2007 WL 120686, at *4 (S.D.N.Y. Jan. 16, 2007) ("[T]he proponents of the [expert] Report[] bear the initial burden of demonstrating the admissibility of the testimony.").

Rule 702 of the Federal Rules of Evidence states the following requirements for the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[24]

Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the trial judge must determine whether the proposed testimony "both rests on a reliable foundation and is relevant to the task at hand."[25] A district court must act as "a gatekeeper to exclude invalid and unreliable expert testimony."[26]

Expert testimony may not usurp the role of the court in determining the applicable law.[27] Although an expert "may opine on an issue of fact," an expert "may not give testimony stating ultimate legal conclusions based on those

---

[24] Fed. R. Evid. 702.

[25] 509 U.S. 579, 597 (1993).

[26] *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 449 (2d Cir. 1999) (quotation omitted). *Accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert*'s general holding setting forth the trial judge's gatekeeping obligation in regard to expert testimony based on scientific knowledge to testimony based on "technical" and "other specialized" knowledge).

[27] *See United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999).

facts."[28] Expert testimony is inadmissible when it addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help."[29]

In addition, Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[30] "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."[31]

## III.   DISCUSSION

### A.   Striking Similarity

After comparing plaintiffs' screenplay with defendants' movie, I find that no reasonable juror could find the two works so strikingly similar as to justify

---

[28] *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). *Accord Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion.").

[29] *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (citing cases).

[30] Fed. R. Evid. 403.

[31] *Daubert*, 509 U.S. at 595 (quotation omitted).

an inference of copying and preclude the possibility of independent creation.[32] Although various similarities do exist, as the Court held in its prior summary judgment opinion, there are sufficient dissimilarities that foreclose a finding of striking similarity.

For example, although dodgeball is the central sport in both works, the sport is not presented and used in the same manner. In the Screenplay, dodgeball is the a major sport in the town, and the main characters grew up aspiring to be good dodgeball players. Indeed, dodgeball was a major subject of rivalry since childhood between the main character, Matt, and Mitch. In the Movie, by contrast, the characters stumble upon adult dodgeball through a sports magazine that highlights obscure sports. Neither the main character, Peter, nor his rival, White, had ever played dodgeball before, nor was it ever a subject of their rivalry until they enter the tournament.

---

[32] *See, e.g., Cox v. Abrams*, No. 93 Civ. 6899, 1997 WL 251532, at *6-7 (S.D.N.Y. May 14, 1997) (granting summary judgment for defendants, holding that no striking similarity existed between defendants' film Regarding Henry and plaintiffs' autobiographical manuscript). In reaching this conclusion, I did not rely on any expert testimony; my independent review of the two works was sufficient to determine as a matter of law that no striking similarity exists. *See, e.g., Mowry*, 2005 WL 1793773, at *10 (reviewing and comparing the two works, defendants' film The Truman Show and plaintiff's screenplay, without expert testimony, and reaching the conclusion that the works were not strikingly similar as a matter of law).

Moreover, the main character's love interest in the Screenplay shifts from one person, the cheerleader, to another, the coach's sister Sam, whereas in the Movie, the main character's love interest remains constant on Kate, the lawyer who is hired by the rival gym to foreclose the mortgage on Average Joe's gym. Even on a more abstract level, in the Screenplay, Matt's main motivation was to win the affection of Jessica away from Mitch, the stereotypical popular high school jock with his cheerleader girlfriend; saving his friend's mother's bar was secondary. In the Movie, however, there was never any competition on Peter's part to win the affection of Kate from White, because Kate was repulsed by White. Rather, Peter's sole purpose was to keep his gym from being taken over by the corporate Globo Gym.

The common error that is highlighted by plaintiffs to demonstrate striking similarity, namely the reference to dodgeball's ancient roots in China, is not sufficiently distinctive to overcome these differences. Indeed, this "common error" has also appeared in another work, an episode of the comedy show *South Park*.

Given even these few examples of differences between the works and the absence of sufficiently distinctive common errors, I conclude that no rational juror could find that the works are so similar as to preclude coincidence and

independent creation. Thus, in order to establish copying, plaintiffs must proceed under a theory of access and probative similarities.

### B.  Expert Testimony

#### 1.  Plaintiffs' Expert

Plaintiffs' expert, Ken Dancyger, opined on striking similarity in an expert report and expert rebuttal report. Because striking similarity is no longer an issue in the case, Dancyger's testimony on striking similarity is unnecessary, as is defendants' experts' testimony on this issue.

To the extent Dancyger's report can be read as opining on probative similarities, his testimony must be excluded because it fails to meet the standard set forth in Rule 702 and *Daubert*. I conclude that expert testimony as to probative similarities is unnecessary and will not aid the jury. These are not highly technical works. The jury is capable of recognizing and understanding the similarities between the works without the help of an expert. The jury can review the two works and decide for itself whether there are similarities that are probative of copying and how probative of copying those similarities are in light of plaintiffs' proof of access. Accordingly, neither Dancyger nor either of defendants' two experts, Dr. Mark Rose and Lisa Lieberman Doctor, may testify as to the probative similarities of the works.

To the extent Dancyger's report can be read as opining on the issue of substantial similarity, his testimony must be excluded because he is not competent to testify as to that issue. At his deposition, Dancyger admitted to not knowing the difference between expression and ideas as those terms apply to copyright law. He also admitted to not knowing what the term scenes a faire means in terms of copyright law and that the first time he had heard the term was when he read defendants' experts' reports. Indeed, counsel for plaintiff essentially conceded at the April 17, 2007 hearing that Dancyger had intended to opine only on the issue of striking similarity.[33]

However, defendants' motion in limine letters seeking to remove striking similarity from the case and thus preclude plaintiffs' expert were in actuality a very late summary judgment motion, submitted well after the close of discovery. Defendants had filed a summary judgment motion many months ago, which did not raise the issue of striking similarity. Plaintiffs had good reason to believe that defendants had chosen not to seek summary judgment on the issue of striking similarity. Likewise, despite the objection that defendants lodged at that

---

[33] *See* 4/17/07 Tr. at 42 (in defending Dancyger's lack of knowledge of the term scenes a faire, stating "[W]hen a[n] expert makes the determination of whether two works are so strikingly similar that copying had to take place . . . scenes a faire is actually not part of that analysis. . . . Because *scenes a faire is a question of substantial similarity*." (emphasis added)).

11

time, the Court did not preclude plaintiffs' expert because the Court did not need to consider that testimony to decide the motion. As a result, plaintiffs could reasonably have concluded that their expert, who had opined on the issue of striking similarity and had not been precluded, would be able to testify on that issue.

Based on defendants' eleventh-hour motion, however, plaintiffs' expert has been precluded from testifying on striking similarity, which plaintiffs may have felt eliminated the need to present an expert on substantial similarity to the jury. Now that his testimony has been precluded in its entirety, it would be unfair to preclude plaintiffs from having an opportunity to present an expert witness on the issue of substantial similarity. As a result, I am reopening expert discovery for the limited purpose of permitting plaintiffs to present a competent expert witness on the issue of substantial similarity. If plaintiffs opt to take advantage of this opportunity, they must identify an expert witness within two weeks of the date of this Opinion. That expert shall submit his or her report on or before four weeks after the date of this Opinion. The deposition of plaintiffs' expert shall take place within six weeks of the date of this Opinion. At the close of that limited discovery, defendants will, of course, be permitted to raise any Rule 702 and *Daubert* challenges to plaintiffs' new expert witness.

### 2. Defendants' Experts

Plaintiffs challenge defendants' planned use of two experts at trial. At the April 17 hearing, counsel for defendants represented to the Court that the testimony of the two experts would not be duplicative or cumulative.[34] After having reviewed both the Rose and Doctor reports, however, I conclude that there was substantial overlap between the reports and there is absolutely no need for both experts to testify. As a result, Lisa Lieberman Doctor's report is excluded and she is precluded from testifying at trial. Defendants are limited to the report and testimony of Rose.

As discussed above, Rose will not be permitted to testify as to striking or probative similarity. Additionally, to the extent Rose's report and testimony addresses the chronology and evolution of defendants' script, I find that testimony should also be precluded under Rule 702.[35] Just as with probative similarities, the jury is capable of ascertaining which elements were or were not in prior drafts of defendants' work at various points in time based on the drafts themselves, without the help of an expert. Thus, Rose's testimony will be permitted only on the issue of substantial similarity.

---

[34] *See* 4/17/07 Tr. at 26-27.

[35] As a result, Part V of Rose's report is stricken.

## IV.  CONCLUSION

For the reasons set forth above, defendants' motions for summary judgment on striking similarity and to preclude plaintiffs' expert are granted.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         April 27, 2007

## - Appearances -

**For Plaintiffs:**

Guy Robert Cohen, Esq.
Neal Howard Klausner, Esq.
Shirin Keen, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019
(212) 468-4800

**For Defendants:**

Michael B. Carlinsky, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Robert H. Rotstein, Esq.
Lisa E. Stone, Esq.
Gregory R. Jones, Esq.
McDermott, Will & Emery, LLP
2049 Century Park East, 34th Floor
Los Angeles, CA 90067
(310) 277-4110

Christine A. Pepe, Esq.
Morgan, Lewis & Bockius LLP
340 Madison Avenue
New York, NY 10017
(212) 547-5400